```
                   UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA
                          WESTERN DIVISION
```

IN RE:

CAROL L. ROBERTS                                         Chapter 7

    Debtor.                                      Bankruptcy No. 03-00965S

CAROL L. ROBERTS

    Plaintiff

v.                                                Adversary No. 04-9025S

BRIAR CLIFF COLLEGE
and L.F. NOLL, INC.

    Defendants.


## MEMORANDUM OF DECISION

On February 3, 2004, Carol L. Roberts filed a complaint seeking to enjoin Briar Cliff College and L.F. Noll, Inc. from collecting a debt incurred with Briar Cliff.  Roberts asserts that the debt is merely an unpaid account rather than an educational loan, and that the debt was discharged in her bankruptcy case.  Defendants contend that the debt is a student loan within the scope of 11 U.S.C. § 523(a)(8).

Final trial was held September 22, 2004 in Sioux City. Plaintiff Carol Roberts appeared pro se.  Michele Lewon appeared as attorney for defendants Briar Cliff and L.F. Noll. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Findings of Fact

Roberts filed a Chapter 7 bankruptcy petition on March 20, 2003.  Her schedule of unsecured creditors listed a debt owed to Briar Cliff College in the amount of $750.00.  Roberts received a discharge on June 25, 2003.

In 1995, Roberts was employed at MCI.  As a benefit of employment, MCI offered a program in conjunction with Briar Cliff allowing employees to take job-related college classes at the MCI worksite.  Prior to starting classes, employees were to advise the MCI human resources department what classes they would be taking and what the costs would be for tuition, fees and books.  If an employee completed a class with a grade of C or better, MCI would reimburse the employee for the costs of the class.  If an employee did not receive a qualifying grade, the employee's account with Briar Cliff became immediately due.  Employees had one year from the first day of class to submit documents to MCI for reimbursement.

Roberts registered for classes in September and October 1995.  She took one class at a time, each lasting between four and six weeks.  Roberts successfully completed three classes. In early 1996, she was enrolled in a fourth class.  At about this time, she became pregnant.  She did not complete her last

class and left MCI.  She did not obtain reimbursement for any of the classes.

Briar Cliff's general policy is to require payment of tuition by the first day of classes.  Briar Cliff will assess a late fee if charges are not paid by the end of the first week of classes.  If tuition remains unpaid, the student will not be allowed to register for the next term.

Briar Cliff has a modified policy in the case of a student taking classes as part of an employer-sponsored program such as the one at MCI.  Briar Cliff does not require prepayment of tuition for such classes, and it would not begin collection efforts before a student completed a class and received a grade.  Briar Cliff expects that it will usually be paid after the student receives reimbursement from the employer.  Briar Cliff will allow a student in an employer-sponsored program to enroll in classes for the next term even if tuition for the current term has not yet been paid.

Sometime in 1996, Roberts received correspondence from Briar Cliff regarding her account balance.  Roberts made arrangements to make payments on the debt.  From April 1997 to December 2002, she made small payments at irregular intervals.  Her remaining account balance is $700.

The statement of account, Exhibit D, indicates that

charges were made to Roberts' account for two types of classes. "Tuition MCI Fall" indicates a charge for courses offered on site at MCI. A charge of $711 described as "Tuition Evening/Weekend" was made to Roberts' account. Roberts denies having taken any evening or weekend classes.

## Discussion

The only issue before the court is whether the debt owed to Briar Cliff is an educational "loan" within the meaning of 11 U.S.C. § 523(a)(8). The court concludes that the manner in which the debt was incurred, depending on whether it is attributable to classes taken through the MCI program, affects the dischargeability determination. Briar Cliff has not counterclaimed for a money judgment. This adversary proceeding requires that the court determine only the dischargeability of the debt. It is not necessary to determine what proportion of the debt is attributable to charges for either type of class. The court will make a separate determination as to the dischargeability of the two types of debt.

The Bankruptcy Code does not contain a definition of the term "loan." In <u>Cazenovia College v. Renshaw (In re Renshaw)</u>, 222 F.3d 82, 88 (2d Circuit 2000), the court applied a

definition based on the common law definition formulated in <u>In re Grand Union Co.</u>, 219 F. 353, 356 (2d Cir. 1914).  The Circuit Court in <u>In re Renshaw</u> paraphrased the definition as follows:  "To constitute a loan there must be (i) a contract, whereby (ii) one party transfers a defined quantity of money, goods, or services to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date."  The court commented further:

> This definition implies that the contract to transfer items in return for payment later must be reached prior to or contemporaneous with the transfer.  Where such is the intent of the parties, the transaction will be considered a loan regardless of its form.  Absent such an agreement, failure to pay a bill when due does not create a loan.

<u>In re Renshaw</u>, 222 F.3d at 88.  The <u>Renshaw</u> decision was a consolidated appeal of two similar cases.  The court found that in each case, the creditor college had not made a contemporaneous agreement to permit the student to attend classes and to accept payment at a later date.  The student had unilaterally decided not to pay tuition when it was due.  <u>Id.</u>  Two circuit courts have followed the <u>Renshaw</u> analysis.  <u>In re Chambers</u>, 348 F.3d 650 (7th Cir. 2003); <u>Boston University v. Mehta (In re Mehta)</u>, 310 F.3d 308 (3d Cir. 2002).

   This court agrees with the reasoning in <u>In re Renshaw</u>.

5

In In re Chambers, the Seventh Circuit observed that Congress has consistently expanded the scope of § 523(a)(8) in the years since its enactment.  In re Chambers, 348 F.3d at 654.  Nevertheless, Congress has not excepted all educational debt from discharge; it has retained the term "loan."  Id. at 657.  This construction indicates an intent to limit the exception.  Application of the common law definition, as stated in In re Renshaw, appropriately interprets § 523(a)(8) in view of the principle that exceptions to discharge are to be interpreted narrowly in favor of the debtor.  Id. at 656-67.

    The analysis in In re Renshaw is consistent with the Eighth Circuit's decisions regarding the scope of § 523(a)(8).  In United States Dept. of Health & Human Services v. Smith, 807 F.2d 122 (8th Cir. 1986), the debtor had received a grant to study medicine.  Under the terms of the grant program, debtor agreed to repay the amount of the grant if he did not practice medicine in a "physician shortage area."  Debtor breached the agreement.  The Eighth Circuit held that the obligation was an educational loan within the meaning of § 523(a)(8) even though its repayment was contingent.  The debtor in In re Smith received grant money and made a contemporaneous agreement to repay the debt.  See In re Renshaw, 222 F.3d at 90 (discussing In re Smith).

6

In Johnson v. Missouri Baptist College (In re Johnson), 218 B.R. 449 (B.A.P. 8th Cir. 1998), the creditor college had extended credit to the student debtor. In late August 1989, the debtor executed a promissory note that became due in December 1989. Debtor defaulted. The court held that the debt was a nondischargeable loan, even though debtor received no money from the college. The note in In re Johnson satisfied the requirement that there be a contemporaneous agreement in order to make a loan. See In re Renshaw, 222 F.3d at 90 (discussing In re Johnson).

The court first considers the debt owed Briar Cliff that may be attributable to classes Roberts attended on site at MCI. Applying the analysis of In re Renshaw, the court concludes that any such debt constitutes a nondischargeable loan under 11 U.S.C. § 523(a)(8). Briar Cliff agreed to extend credit to Roberts to take classes at MCI. Because of its arrangement with MCI, Briar Cliff did not require Roberts to prepay tuition and fees. It knew that MCI had agreed to reimburse its employees for successful completion of classes. Briar Cliff agreed to accept later payment, allowing time for the reimbursement procedure to be completed. Roberts agreed that she was primarily responsible for repayment of tuition and fees. She knew the amount of credit that Briar Cliff was

7

extending for these charges.  She knew that if she was not reimbursed by MCI for any reason she was liable to repay the debt.

As to any debt owed to Briar Cliff that may be attributable to charges for evening and weekend classes, the court concludes that such debt is dischargeable.  Briar Cliff's policy as to such classes is to require payment of tuition charges by the first day of classes.  Briar Cliff did not have an agreement with Roberts to allow her to attend evening and weekend classes without prepayment of tuition.  There was no agreement to accept later repayment.  Assuming that Roberts registered for such classes, the charges were made to her account after she failed to pay tuition when it became due.  These facts are similar to those in In re Chambers, which the court described as the debtor's unilateral failure to pay the bill for tuition when it came due.  348 F.3d at 657-58.

IT IS ORDERED that, to the extent it is attributable to charges for classes taken at MCI, the debt of Carol Roberts owed to Briar Cliff is excepted from her discharge pursuant to 11 U.S.C. § 523(a)(8).

IT IS FURTHER ORDERED that, to the extent it is attributable to charges for evening or weekend classes, the

debt owed to Briar Cliff is discharged.  Briar Cliff and L.F. Noll, Inc. are enjoined from attempting collection of any such debt.

SO ORDERED THIS 1st DAY OF OCTOBER 2004.

*[signature]*

William L. Edmonds, Bankruptcy Judge